UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

WILLIAM COALE,

        Plaintiff,

v.

METRO-NORTH RAILROAD COMPANY,

        Defendant.

3:08-cv-01307 (CSH)

**RULING ON PLAINTIFF'S MOTION
FOR SPOLIATION OF EVIDENCE SANCTIONS**

<u>HAIGHT</u>, Senior District Judge:

    Plaintiff William Coale has filed a motion for spoliation sanctions directed at Defendant Metro-North Railroad Company ("Metro-North") in light of Metro-North employees' alleged improper failure to preserve the physical substance that caused Coale to slip-and-fall, the accident at the core of this dispute. The factual background of this litigation has been documented in detail in a previous order of the Court, [Doc. 67], and is only discussed herein as necessary to resolve the instant motion.

**I.    Background**

    On March 18, 2008, Plaintiff, an Assistant Conductor employed by Metro-North, sustained serious injuries after slipping on an unidentified oily substance on the floor of the register room at the New Haven-Union Station. As required by company policy, employees of Metro-North documented the surroundings and took evidence, which included making attempts at the scene, unsuccessfully, to identify the oily substance. However, Metro-North made no effort to secure the physical substance such that efforts could later be made to identify with precision what the substance was. Rather, it directed an employee of the New Haven Parking Authority ("NHPA") to mop away

the substance (such that it no longer posed a danger). Doc. 59-1, at 24. In consequence, the current record is silent as to the nature of the substance; the jury will simply not be in a position to know with certainty what the substance was that caused Coale to fall.

In light of this fact, Plaintiff moved for spoliation sanctions. Doc. 58. In essence, he argued that because it was Metro-North's fault that the oily substance was not preserved—and that therefore the jury will be ignorant as to its nature—Metro-North should be the one to bear the consequences of the evidentiary gap. In furtherance of that argument, Plaintiff argued that his motion satisfied the three-part test for the imposition of spoliation sanctions, which requires the movant to establish:

> (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed 'with a culpable state of mind'; and (3) that the destroyed evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.

*Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002) (citing *Byrnie v. Town of Cromwell*, 243 F.3d 93, 107-12 (2d Cir. 2001)).

In an earlier ruling, this Court denied Plaintiff's spoliation motion because he failed to meet the third prong of the *Residential Funding* test, namely, to demonstrate that the allegedly unpreserved evidence was relevant to his claims. 34 F. Supp.3d 206, 220 (D. Conn. 2014). However, that ruling was then disturbed on appeal by the Second Circuit, which held that the identification of the substance *is* relevant to the notice element of Plaintiff's negligence claim because "identifying the substance may have shed light on the party who spilled it." 621 F. App'x 13, 16 (2d Cir. 2015). In light of this finding, the Court of Appeals held that the third factor in the spoliation test was in fact met, and it remanded Plaintiff's spoliation motion with specific direction

to "evaluate the remaining factors" that this Court deemed unnecessary to assess.[1] *Id.*

The Second Circuit's ruling also vacated the Court's determination that summary judgment should enter for Metro-North. *Id.* at 14-16. This Court came to that conclusion in light of the fact that there was no triable issue as to whether Metro-North had actual or constructive notice of the spilled substance. While the Court of Appeals did not expressly disagree with that finding, it nevertheless disagreed that it was dispositive of the summary judgment motion. It held that this Court erred in its finding that Plaintiff could not proceed, as a matter of law, on a theory of *res ipsa loquitur*, and that the Court should have let the case proceed to a jury trial on that theory.

Following the Second Circuit's remand order, this Court solicited supplemental briefing on the effect of the Court of Appeals' holdings. Specifically, the Court directed the parties to address "the proper interaction of the spoliation principle with that of *res ipsa loquitur*." Doc. 84. The parties submitted such briefs,[2] [Docs. 88-90], and Plaintiff's motion is again ripe for disposition.

## II. Discussion

### A. Spoliation of Evidence

The Court must now determine whether the two previously unaddressed elements of the spoliation sanctions test are met in this case. Specifically, the Court must determine whether Metro-North (i)"had an obligation to preserve [the spilled substance] at the time it was destroyed," and, if

---

[1] As discussed in the earlier Memorandum and Order, "[i]f the evidence in question is not relevant to a claim or defense, so that the third element cannot be satisfied, a court need not reach the first two. *Kullman v. New York*, No. 8:07cv16 (GLS) (RFT), 2012 WL 1142899 (N.D.N.Y. Apr. 4, 2012)." 34 F. Supp.3d at 220.

[2] In his supplemental opening brief, Plaintiff, for the first time, asked the Court for sanctions as to certain photographs taken by Metro-North that he claimed were indecipherable. Doc. 88. Plaintiff withdrew this request in his supplemental reply brief. Doc. 90, at 2. The Court thereby need not address its merits.

so, (ii) whether it "destroyed [it] with a culpable state of mind." *Residential Funding*, 306 F.3d at 107.

      **1.**      **Obligation to Preserve**

Plaintiff's argument is that Metro-North had an obligation to preserve physically the substance in light of the specific instructions in Metro-North's Incident Investigation and Reporting Manual (the "Manual"), [Doc. 59-4], which, *inter alia*, require Metro-North employees to preserve evidence following an "incident."[3] The Manual requires that "[a]ll [Metro-North] incidents must be reported, investigated and documented in accordance with this program." Doc. 59-4, at 1.

At the outset, the Court notes that no rule dictates that an entity's self-imposed obligation to preserve evidence for internal purposes creates an automatic obligation to preserve that evidence for purposes of litigation. Nevertheless, in this case involving a common carrier train operator well accustomed to on-the-job injuries and concomitant litigation, the Court has little difficulty in holding that the Manual's discrete requirements may be construed as obligations to preserve evidence for purposes of litigation. An "obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation," including "when a party should have known that the evidence may be relevant to future litigation." *Kronisch v. U.S.*, 150 F.3d 112, 126 (2d Cir. 1998). Although the Manual describes that "[c]orrective actions are the most important outcome of [an internal accident] investigation," [Doc. 59-4, at 23], it would strain credulity to claim that Metro-North does not also understand that evidenced procured through its investigation will likely be relevant to future

---

[3] The Manual defines "incident," as "[a]ny undesired event arising from the operations of the MTA Metro-North Railroad which results in or may result in injury or illness to any person or damage to the property of the railroad or another." Doc. 59-4, at 1.

litigation.  Metro-North, a common carrier, is no stranger to negligence lawsuits,[4] which, as does the instant case, frequently involve complex questions of causation.  Metro-North is therefore clearly on notice that the fruits of its investigations to "[d]etermine the [c]auses" of an accident—the lengthiest section of its Manual—will produce evidence that "may be relevant to future litigation."  In this context, the Court is satisfied that Metro-North's breach of its internal obligations to preserve evidence, as outlined in the Manual, may be sufficient grounds to determine that Metro-North violated its obligation as to this tribunal to preserve relevant evidence.

The Court next finds that the Manual did in fact impose an obligation on Metro-North to preserve the spilled substance.  For one, the Manual makes clear that one of its primary purposes is to "[i]dentify the causal factors that contributed directly or indirectly to each incident."  Doc. 59-4, at 1.  It goes on to state that "[e]very factor relating to an incident must be discovered and analyzed," and that it is "vital to preserve evidence that will assist in determining the cause of the incident."  Doc. 59-4, at 2, 7.  The Manual then explains in detail the procedures for "collecting and preserving evidence."  Doc. 59-4, at 9.  As relevant, that section states as follows:

> Survey the secured area to locate objects, substances or conditions
> that may be related to the incident.  Take photographs or videotape

---

[4] For example, Metro-North is currently defending a significant number of pending negligence cases just in this District, *see Cammilleti v. Metro-North R.R. Co.*, No. 15-cv-1357 (D. Conn.); *Riccitelli v. Metro-North R.R. Co.*, No. 16-cv-256 (D. Conn.); *Kuziel v. Metro-North R.R. Co.*, No. 16-cv-257 (D. Conn.); *Brenner v. Metro-North R.R. Co.*, No. 16-cv-317 (D. Conn.); *Campbell v. Metro-North R.R. Co.*, No. 16-cv-406 (D. Conn.); *Balacky v. Metro-North Commuter R.R. Co.*, No. 13-cv-00670 (D. Conn.); *Sorensen v. Metro-North Commuter R.R. Co.*, No. 13-cv-749 (D. Conn.); *Green v. Metro-North R.R. Co.*, No. 14-cv-1188 (D. Conn.); *Worsham v. Metro-North Commuter R.R. Co.*, No. 15-cv-816 (D. Conn.), not to mention hundreds of other terminated cases it has previously litigated.  It is therefore clear why the Manual requires, for example, that "[a]ll collected evidence should be held for forwarding to Claims Services."  Doc. 59-4, at 9

> before the site is disturbed.  Physical hazards and safety controls present or absent at the time of the incident are particularly important. *When evidence is located make sure that it is marked and <u>protected</u>. In particular, take steps to ensure the observation <u>and recording</u> of* fragile, perishable, or transient evidence (for example: instrument readings, control settings, weather and other environmental conditions, *<u>chemical spills</u>*, stains, skid marks). . . .
>
> *Tools, material, parts and equipment that may be relevant must be carefully examined, <u>secured</u> and noted as evidence*.  Such items must be protected against further damage or alteration. . . .  It is better to secure items rather than to find that a tool, part or material is important but has been misplaced, discarded or altered.

Doc. 59-4, at 9 (emphases added).  Directly relevant here, the Manual then notes that "[t]here are many reasons for *taking samples of materials* during an incident investigation.  *Samples may reveal contributing factors or the actual cause of the incident*."  Doc. 59-4, at 11 (emphases added).  The Manual then directs that "[a]t the conclusion of the investigative phase of your investigation you should have . . . resolved matters of speculation and disputed facts through analysis, *testing*, and discussion."  Doc. 59-4, at 17 (emphasis added).  Further, the Manual states that "[t]o seek out possible causes resulting from the equipment and materials used, investigators might ask . . . Were hazardous substances involved? . . . *Were they clearly identified*?"  Doc. 59-4, at 19 (emphasis added).  Taken together, there can be no dispute that, once Metro-North was unable to ascertain the nature of the spilled substance at the scene, the above provisions obligated it to secure a sample of the substance.  The fact that the record is deficient as to a piece of evidence that has been determined to be directly relevant to Plaintiff's cause of action demonstrates this clearly.

Metro-North's arguments are not to the contrary.  It argues that photographing the spilled substance was sufficient to satisfy the Manual's terms.  Doc. 64, at 5.  Not so.  As correctly stated in the Manual, photographing is a "valuable method[] for recording conditions *that may change*

during the investigation or shortly thereafter." Doc. 59-4, at 10.  Surely, characteristics such as the shape or location of the spilled substance may change, and thus capturing those characteristics specifically via photograph is pertinent.  However, the nature of the substance is not similarly subject to change—there is no discernible reason to think that whatever that substance was on the day Plaintiff slipped on it, it is not the same today.  Moreover, Metro-North's position is clearly refuted by the simple fact that the photographs it did take did not record the nature of the substance, and, further undermining its position, its employees at the scene felt a need to determine what the substance was through means other than photography.[5]

Relatedly, Metro-North argues that photographing the substance satisfied its obligation to "take steps to ensure the observation and recording of . . . [the] chemical spill." Doc. 64, at 5.  This too is wrong.  While photographing the substance did constitute an "observation and recording" of *certain attributes* of the chemical spill, it failed to be such as to a distinct, and relevant, attribute: the nature of the substance.  As the Manual acknowledges, a sample of the substance "may reveal contributing factors or the actual cause of the incident." Doc. 59-4, at 11.  In short, Metro-North failed to "record" a key attribute of a piece of evidence that may have assisted Metro-North (and the jury) in determining the cause of Plaintiff's accident.  This omission violates both the letter, and the spirit, of the Manual's dictates.

---

[5] *See* Doc. 59-1, at 19-20 (Mary Walsh testifying that Joe Kannell "took his hand and kind of . . . wiped it with his finger . . . [a]nd we looked at it," and "that's how we knew it was more than – it wasn't water.  It was almost like an oil"); Doc. 59-2, at 23-24 (Sherry Herrington testifying that "It didn't smell; I did try to smell it").  Further, Metro-North's position that it views photographing a substance as a method to record the nature of the substance is contradicted by the deposition testimony of Joe Kanell, the line superintendent of operations of Metro-North's New Haven line at the time of the accident.  When asked, "Did anyone do anything to try and determine what specifically the substance was, as far as you're aware," Kanell responded, "Not that I'm aware, no." Doc. 44-3, at 17.

This reasoning also demonstrates the futility of Metro-North's argument that it did not actually fail to "preserve" the evidence. Doc. 64, at 3-6. Specifically, Metro-North argues that "[o]bservations as to the physical characteristics of the substance were captured by the witnesses' observations and the photographs, all of which were made available to Coale throughout this litigation. In all of these ways, evidence regarding the identity of the substance was properly maintained." Doc. 64, at 4. As discussed, this is clearly incorrect. A relevant aspect of the physical characteristic of the substance was *not* captured by either observation or photograph, and evidence regarding the identity of the substance was *not* properly maintained. The record is thereby entirely silent as to this question. It would not be if Metro-North had followed the Manual's terms properly.[6]

The Court is satisfied that Metro-North had an obligation to preserve the spilled substance.

### 2. Culpability

In this Circuit, the destruction of relevant evidence may be a sanctionable offense even where the party destructed the evidence negligently, rather than intentionally. *Residential Funding*, 306 F.3d at 108 ("The sanction of an adverse inference may be appropriate in some cases involving the

---

[6] Metro-North invokes the phantom of the slippery slope. It argues that a sanction in this case would mean that "every single time a slip-and-fall occurs anywhere in Connecticut . . . a defendant will face spoliation sanctions if it does not somehow preserve a sample of the substance itself for subsequent physical analysis." Doc. 64, at 4. It then attempts to support its theory through a hypothetical example: "[u]nder the plaintiff's theory, every time someone trips over an allegedly defective portion of sidewalk and sustains injuries . . . the party responsible for that area would have to either preserve the sidewalk in its defective state, or dig up the allegedly defective portion of sidewalk and maintain it somewhere." Doc. 64, at 4. Metro-North's argument is too clever by half. Where someone trips over a sidewalk, the Court knows what that person tripped over: a sidewalk. Further, in the sidewalk example, unlike here, the relevant attribute of the evidence would likely be *visibly* identifiable. As such, a proper photograph would be sufficient to identify properly the nature of the defect (*i.e.*, a crack in the sidewalk). Uprooting the cement would almost certainly be unnecessary.

negligent destruction of evidence because each party should bear the risk of its own negligence.");[7] *Jackson v. AFSCME Local 196*, 2010 WL 864509, at *4 (D. Conn. Mar. 10, 2010) ("The Court does not find that plaintiff knowingly destroyed a 'Renee Jackson File'; however, a 'culpable state of mind is established by ordinary negligence.'" (quoting *Doe v. Norwalk Comm. College*, 248 F.R.D. 372 (D. Conn. 2007)).

Metro-North does not dispute this principle. Rather, it argues that Plaintiff simply has not shown that Metro-North was negligent. Doc. 64, at 7. It is mistaken. In this Circuit, a party's negligence is established for purposes of spoliation sanctions where it fails to preserve evidence that it had an obligation to preserve. *See Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 220 (S.D.N.Y. 2003) ("Once the duty to preserve attaches, any destruction of [evidence] is, at a minimum, negligent."); *Mpala v. City of New Haven*, 2014 WL 883892, at *6 (D. Conn. Mar. 6, 2014) ("Because the Library was arguably obligated to preserve the September 18 video and it did not do so (if a video even existed), it possessed the requisite ordinarily negligent state of mind for the Plaintiff to proceed on his spoliation argument"); *Johnson v. Waterford Hotel Grp., Inc.*, 2011 WL

---

[7] The Court notes that the Federal Rules of Civil Procedure were recently amended, effective December 1, 2015, to permit an adverse inference instruction upon the spoliation of electronically stored information ("ESI") "only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation." Fed. R. Civ. P. 37(e)(2). The Advisory Committee Notes make it clear that this new provision "rejects cases such as Residential Funding Corp. v. DeGeorge Financial Corp., 306 F.3d 99 (2d Cir. 2002), that authorize the giving of adverse-inference instructions on a finding of negligence or gross negligence." However, Rule 37(e) is expressly cabined only to ESI and therefore does not disturb the present application of the *Residential Funding* rule. *See U.S. v Safeco Ins. Co. of Am.*, 2016 WL 901608, at *7 n.3 (D. Idaho Mar. 9, 2016) ("Rule 37(e), however, applies only to electronically stored information. It therefore does not impact the Court's inherent sanctioning authority when spoliation of tangible evidence is at issue."); *see also Federico v. Lincoln Military Housing, LLC*, 2014 WL 7447937, at *10 (E.D. Va. Dec. 31, 2014) (addressing the earlier version of Rule 37(e), and determining that it "does not affect sanctions on the court's inherent power because it only bars sanctions for lost electronically stored information").

87288, at *2 (D. Conn. Jan. 11, 2011) ("The Court has already found that the Plaintiff discarded the journal after her duty to preserve arose. Therefore, she was at least negligent in doing so").

This principle especially applies here, and leads to the conclusion that Metro-North's culpability was such that sanctions are appropriate. As shown above, Metro-North's Incident Investigation and Reporting Manual created an obligation on the part of Metro-North to preserve the evidence at issue. Metro-North failed to do so. Further, as testified to by Metro-North's Vice President of Operations Services, all of Metro-North's managers and supervisors had copies of the Manual and were required to comply with its terms. Doc. 59-2, at 35-36. Moreover, several of these individuals were present at the time of the accident in question. Doc. 59-1, at 17-18. Therefore, not only has Plaintiff shown that Metro-North had an obligation to preserve the spilled substance, he has also shown that Metro-North either knew, or should have known, of this obligation, both in a general sense *and* as to the specific occurrence at issue. Accordingly, the Court has no difficulty in determining that Metro-North's culpability exists within the "'continuum of fault,'" which, "rang[es] from innocence through the degrees of negligence to intentionality.'" *Residential Funding*, 306 F.3d at 108 (quoting *Reilly v. Natwest Markets Grp., Inc.*, 181 F.3d 253, 267 (2d Cir. 1999)). Metro-North therefore had a culpable state of mind required for the imposition of spoliation sanctions.

In light of the above, as well as the Second Circuit's determination as to the relevance of the spilled substance, each of the three spoliation factors are met in this case. Plaintiff is thereby entitled to a spoliation sanction.

    **B.**    **Sanction**

Having determined that a sanction is appropriate in this case in light of Metro-North's negligent destruction of a key piece of evidence, the Court must determine the scope of that sanction.

Although "a district court has broad discretion in crafting a proper sanction for spoliation," the Second Circuit has offered instructions as to how that discretion should be informed:

> The applicable sanction should be molded to serve the prophylactic, punitive, and remedial rationale underlying the spoliation doctrine. The sanction should be designed to: (1) deter parties from engaging in spoliation; (2) place the risk of an erroneous judgment on the party who wrongfully created the risk; and (3) restore the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence by the opposing party.

*West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999) (internal citations and quotations omitted).

Plaintiff proffers, in the alternative, three potential sanctions. He argues that this Court should either: (i) rule, as a matter of law, that Metro-North's negligence caused the spill; (ii) instruct the jury that it may infer that the substance would have harmed Metro-North's position in this case; or (iii) prohibit Metro-North from arguing that it—or anyone not its agent—accessed the register room during the relevant time period.

Only Plaintiff's second proffered sanction of an adverse inference instruction furthers each of the goals identified in *West*. A ruling that Metro-North's negligence caused the spill would be excessive. It would not place Plaintiff in the position he would have been, it would place him in a far more favorable one. This is because it would preclude the jury from considering Metro-North's affirmative defenses. For example, Metro-North would not be able to argue that even if the substance were one over which it generally had control, Plaintiff (or a non-agent) actually spilled the substance. In short, Plaintiff seeks a ruling not just that Metro-North was in fact negligent, but that Metro-North is *liable* for negligence as a matter of law. A sanction that would prohibit Metro-North from asserting its defenses as to liability is simply not warranted in this case.

Plaintiff's other proffered sanction is also inappropriate. Plaintiff argues that Metro-North should be prohibited from arguing to the jury that anyone other than a person over which it had control accessed the register room. This sanction would largely be untethered to the harm caused by Metro-North's sanctionable offense, and therefore cannot properly place Plaintiff in the position he would have been absent the spoliation. The result of Metro-North's negligence is only that the record does not demonstrate with certainty the nature of the spilled substance. Any sanction should therefore be targeted at that deficiency; *i.e.*, any sanction should place the risk of an erroneous finding as to the nature of the at-issue substance onto Metro-North. A sanction targeted at access to the register room would not be so targeted because it would not be isolated to rectifying the relevant deficiency. Specifically, it would not just address the question of who had general control over the substance that was spilled, it would also impact the question as to who, in fact, was responsible for spilling it. Such a sanction is not appropriate on the facts of this motion.

Accordingly, the Court finds that an adverse inference instruction as to the nature of the spilled substance is appropriate. Specifically, the jury will be instructed that if neither party has proven by a preponderance of the evidence the nature of the spilled substance, the jury can (but need not) infer that the nature of the substance would be harmful to Metro-North's position.[8]

This sanction aligns with each of the factors identified in *West*. *First*, any adverse inference instruction serves a deterrent effect as a matter of course. As explained by Magistrate Judge Francis:

> The adverse inference thus acts as a deterrent against even the negligent destruction of evidence. This is perfectly appropriate: deterrence is not a function limited to punitive sanctions where intent has been demonstrated. In the law of torts, for example, damages for

---

[8] What exactly it will mean for the jury to infer that the nature of the substance is "harmful to Metro-North's position" is discussed in the Conclusion, *infra* Section III.

negligence serves to deter such conduct in the future.

*Turner v. Hudson Transit Lines, Inc.*, 142 F.R.D. 68, 75 n.3 (S.D.N.Y. 1991). Undoubtedly, severer sanctions would serve even more of a deterrent effect. Given the relatively minor level of culpability involved in Metro-North's conduct, however, the Court finds such to be unnecessary. Plaintiff nowhere seriously alleges that Metro-North's liability rises above ordinary negligence. Nor could he have on the present record. As the Supreme Court has stated, albeit in a distinct yet related context: where "conduct involves only simple, isolated negligence, the deterrence rationale loses much of its force." *Davis v. U.S.*, 131 S.Ct. 2419, 2427-28 (2011); *see also Ace Am. Ins. Co. v. Keystone Const. & Maint. Servs., Inc.*, 2012 WL 4483913, at *13 (D. Conn. Sept. 27, 2012) ("sound public policy requires greater deterrents to gross negligence or intentional misconduct than to ordinary negligence" (internal quotation omitted)). *Second*, it places the risk of an incorrect determination as to the nature of the substance on Metro-North. In other words, if neither party is able to establish beyond a preponderance of the evidence what the nature of the substance was, the scales will then be tipped in favor of Plaintiff, rather than Metro-North. *Third*, an adverse inference will most closely restore Plaintiff to his initial position. For example, even if Plaintiff were able to prove beyond all doubt that the nature of the substance was such that Metro-North was generally in control of it, he would still have been subject to the defenses that it was in fact spilled by someone else, or that he was contributorily negligent. By imposing the sanction discussed above, that paradigm remains.

### C. Effect of the Instant Ruling

The Court is now required to address the interaction between the foregoing analysis and the Second Circuit's decisions vacating this Court's rulings as to Metro-North's summary judgment

motion and Plaintiff's sanctions motion. In short, the necessary outcome of that interplay is that Plaintiff will now be able to present to the jury both a *res ipsa loquitur* theory as well as a traditional negligence theory, and will be entitled to a distinct adverse inference as to each. This is an appropriate result, for the following reasons.

Although the Court of Appeals did not expressly disturb this Court's finding that Plaintiff's traditional negligence theory should not go to a jury, it did so by implication. As discussed, the Second Circuit's decision did not expressly cast doubt on the Court's finding that there was no triable issue as to actual or constructive notice, an element that is central to a FELA negligence theory. At first glance, then, it might appear that the Second Circuit held that Plaintiff is in fact barred from bringing a traditional negligence theory, but may proceed on a *res ipsa loquitur* theory, and a *res ipsa loquitur* theory alone. However, its decision as to the spoliation motion, by necessary implication, makes clear that its decision was not so limiting. There, the panel held that this Court erred in denying Plaintiff's spoliation motion because the nature of the spilled substance is in fact relevant to "whether Metro-North had actual or constructive notice," which it expressly determined to be "an element of Coale's negligence claim." 621 F. App'x at 16. However, notice is irrelevant to a *res ipsa loquitur* theory. *Flowers v. Delta Airlines, Inc.*, 2001 WL 1590511, at *3 n.7 (E.D.N.Y. Nov. 7, 2011) ("[N]otice of a defect in the instrumentality which caused a plaintiff's injuries—which is required to be proven in traditional negligence cases—need not be proven in cases involving *res ipsa loquitur*."); *Higgins v. White Sox Baseball Club, Inc.*, 787 F.2d 1125, 1129 (7th Cir. 1986) (remanding case for a new trial because, *inter alia*, "the district court . . . never informed the jury that defendants' Instruction No. 14 (which required proof of notice) did not apply to the *res ipsa loquitur* claim"); *Maynard v. Sears, Roebuck and Co.*, 2014 WL 108894, at *3 (E.D. Va. Jan. 10, 2014) ("In

slip and fall cases where the doctrine of res ipsa [loquitur] applies, no question of notice arises at all" (internal quotation omitted)). Therefore, whether Metro-North was on notice of the spilled substance could only be relevant to Plaintiff's traditional negligence theory. It is clear that the Court of Appeals was not of the view that Plaintiff was barred from proffering such a theory.

Moreover, and irrespective of any implied holding from the Court of Appeals, the basis for this Court's earlier grant of summary judgment has nevertheless been removed. This Court's earlier holding was premised on its finding that there was "no evidence on this record to conclude that the substance belonged to Metro-North or NHPA, and that they, and not a third party, were responsible for it being spilled." 34 F. Supp.3d at 218. Now that the Court has engaged in the remand analysis as to Plaintiff's spoliation motion—as it was required to do by order of the Second Circuit—the Court has now imposed an adverse inference instruction that may provide the precise record evidence that it found to be absent earlier. Specifically, there now is a triable question as to whether "the substance belonged to Metro-North or NHPA." This question is one that the Second Circuit expressly stated was relevant to "whether Metro-North has actual or constructive notice . . . of the defective condition that caused the injury." 621 F. App'x at 17. In short, therefore, the basis for the Court's granting of summary judgment as to Plaintiff's traditional negligence theory is gone, namely, that there was "no evidence," and thereby no triable issue, as to whether Metro-North had actual or constructive notice of the spilled substance.

Plaintiff may proceed as to both theories of liability. By necessity and as stated in detail in the Conclusion of this Ruling, the effect of the imposed sanction will be distinct for each theory.

### III. Conclusion

Plaintiff's Motion for Spoliation of Evidence Sanctions [Doc. 58] is hereby GRANTED to cure to the closest extent possible the evidentiary deficiency caused by Metro-North's spoliation of the substance over which Plaintiff slipped.

This Court grants Plaintiff an adverse inference charge instruction which will permit, but not require, the jury to infer from the spoliation of the spilled substance that the nature of the substance would be harmful to Metro-North's position, unless either party can prove what the substance was by a preponderance of the evidence. Specifically, as to Plaintiff's traditional negligence theory, the jury will be permitted, but not required, to infer that the nature of the substance is harmful to Metro-North's position that it had no "actual or constructive notice . . . of the defective condition that caused [Plaintiff's] injury," *Sinclair v. Long Island Railroad*, 985 F.2d 74, 77 (2d Cir. 1993) (internal citation omitted). As to Plaintiff's *res ipsa loquitur* theory, the jury will be permitted, but not required, to infer that the nature of the substance is harmful to Metro-North's position that Plaintiff's injury was not "caused by an agency or instrumentality within [its] exclusive control," *Potthast v. Metro-North Railroad Co.*, 400 F.3d 143, 149 (2d Cir. 2005). As discussed, the jury will only be permitted to make those inferences if it finds that neither party has proven, by a preponderance of the evidence, the nature of the spilled substance.

**It is SO ORDERED.**

Dated: New Haven, Connecticut
April 11, 2016

                                             */s/ Charles S. Haight, Jr.*
                                             **Charles S. Haight, Jr.**
                                             **Senior United States District Judge**